| | | |
|---|---|---|
| **TAMIKA HUDSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-03016** |
| | ) | **Judge Aleta A. Trauger** |
| **BAH SHONEY'S CORPORATION,** | ) | |
| **d/b/a SHONEY'S RESTAURANT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Before the court is the Motion to Compel Arbitration and to Stay All Proceedings (Doc. No. 12) filed by defendant BAH Shoney's Corp.[1] ("BAH" or "defendant"). Plaintiff Tamika Hudson has filed a Response opposing the motion (Doc. No. 22), along with a supporting Memorandum (Doc. No. 23) and Corrected Affidavit (Doc. No. 27). The defendant filed a Reply (Doc. No. 24). For the reasons set forth herein, the defendant's motion will be denied.

## I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff Tamika Hudson was hired on May 31, 2014 as a cashier at a Shoney's Restaurant operated by the defendant. She alleges that her supervisor subjected her to sexual harassment and a sexually hostile work environment beginning immediately after she was hired and continuing despite numerous complaints directly to her shift leader, assistant manager, and BAH's Human Resources Department. She filed an EEOC Charge on October 31, 2013, after which, she alleges, she was subjected to retaliation, culminating in her retaliatory discharge on

---

[1] The defendant asserts that BAH Shoney's Corp. is incorrectly identified in the case caption as "BAH Shoney's Corporation" and that the case caption incorrectly states that BAH Shoney's Corp. does business as Shoney's Restaurant.

March 19, 2014.

The plaintiff filed her Complaint on November 22, 2016 (Doc. No. 1), asserting claims of discrimination and retaliation under Title VII of the Civil Rights Act as amended, 42 U.S.C. §§ 2000e *et seq.*, and state law. In lieu of an answer, BHA has filed its Motion to Compel Arbitration and To Stay All Proceedings. (Doc. No. 12.)

In support of its motion, BAH submitted the Declaration of Catherine Hite (Doc. No. 14-1), currently BAH Executive Vice President and General Counsel of Shoney's; the Shoney's Restaurant Team Member Employee Handbook ("Employee Handbook") (Doc. No. 14-2); and an Employee Acknowledgment (Doc. No. 14-3) executed by the plaintiff on May 31, 2013. In her Declaration, Hite avers that, when BAH hires new employees, it provides them with a copy of the Employee Handbook, which contains the company's Arbitration Policy and Procedures ("Arbitration Policy"). (Hite Decl. ¶ 4; Employee Handbook § 108, Doc. No. 14-2, at 11–15.)

The second paragraph of the Arbitration Policy states, in boldface:

> **THIS IS A LEGALLY BINDING AGREEMENT: By accepting employment at BAH, and by continuing your employment with BAH, after you have been provided a copy of or otherwise received notice of this Arbitration Policy and Procedures, you and BAH consent to and accept all of the terms of the Arbitration Policy and Procedures. The terms of this Arbitration Policy and Procedures are conditions of your employment.**

(Doc. No. 14-2, at 11.) The Arbitration Policy thereafter provides that proceeding under the Arbitration Policy "shall be the exclusive, final and binding method by which employment related legal disputes are resolved. . . . BAH and its employees shall have no right to litigate a dispute in any other forum." (*Id.* at 12.) More specifically, it provides that all claims "arising from or related to the employee's employment relationship with BAH," including—but not limited to—claims arising from allegations of discrimination based on sex, sexual harassment, and retaliation for exercising legal rights, must be resolved through arbitration. (*Id.*)

The Arbitration Policy states that the Arbitration Policy itself, as embodied in § 108 of the Employee Handbook, constitutes the complete agreement between employee and employer regarding arbitration. (*Id.* at 13.) The Arbitration Policy then describes the procedures governing arbitration and covers such matters as the allocation of fees, costs, and attorneys' fees, and appellate procedure. (*Id.* at 13–15.) Finally, the provision states that the Federal Arbitration Act ("FAA"), Title 9 of the United States Code, "will govern the interpretation, enforcement, and all other judicial proceedings under and/or with respect to this Arbitration Policy and Procedures." (*Id.* at 15.)

The Employee Acknowledgement is a one-page document consisting of four paragraphs. By signing it, a newly hired employee acknowledges receipt of the Employee Handbook and purportedly consents to be bound by BAH's Arbitration Policy contained therein:

> **Employee's Acknowledgment of Receipt of Shoney's Restaurants' Arbitration Policy and Procedures.** I have been provided a copy of the Shoney's Restaurants' Arbitration Policy and Procedures contained in the Employee Handbook. The updated document is available for review on the Centernet. I understand that the Arbitration Policy and Procedures is a binding contract between me and BAH Shoney's Corp. d/b/a Shoney's Restaurants and that it is a condition of my employment and of my continued and future employment with BAH Shoney's Corp. d/b/a Shoney's Restaurants. I further understand that, by continuing my employment with BAH Shoney's Corp. d/b/a Shoney's Restaurants, I agree to submit to binding arbitration under Shoney's Restaurants' Arbitration Policy and Procedures of any and all claims, disputes or controversies that exist now or arise later between me and BAH . . . .

(Doc. No. 14-3.) The Employee Acknowledgment submitted by BAH was signed by Tamika Hudson on May 31, 2013. (*Id.*)

In her Corrected Affidavit, the plaintiff describes the circumstances under which she was employed by BAH and signed the Employee Acknowledgment. [2] She alleges that she filled out

---

[2] The original Affidavit (Doc. No. 22-1) contained numerous typographical errors, including an error in paragraph 16, which stated: "Shoney's did let me know in writing or verbally that I was giving up my right to go to court." After the defendant pointed out that

an application on May 25, 2013, at a time when she "needed any job and was desperate" to work to support herself and her newborn baby. (Doc. No. 27 ¶¶ 2–3.) As disclosed on her application, she has a tenth-grade education and has not received a diploma or GED.

The plaintiff does not indicate when she was notified that she was hired, but she began working on May 31, 2013. At the end of her first shift, she received a copy of the Employee Handbook and was asked to sign numerous documents, including the Employee Acknowledgment. She states: "I had to sign all the paper that they gave me that day in order to keep the job." (*Id.* ¶ 8.) She asserts that she did not know that she was signing an arbitration agreement, did not understand that she was giving up her right to go to court if she had a problem, and "did not have a lot of time" to look over the documents she was signing. (*Id.* ¶¶ 10–12.) She asserts that she did not have time to read all the documents, including the Employee Acknowledgment. (*Id.* ¶ 20.) No one mentioned arbitration as she signed the forms; the store manager did not tell her what was in the documents she was signing—she was just told to sign the papers. (*Id.* ¶¶ 10, 15.) She claims that BAH did not inform her orally or in writing that she was giving up her right to go to court and that she does not know what the word "forum" means. (*Id.* ¶¶ 17, 26.) The entire interview and paperwork-completion process took less than thirty minutes. She accepted a job making $8.25 per hour, which equates to approximately $17,000 annually, working 35 to 40 hours per week. (*Id.* ¶ 22.) The allegations in the plaintiff's affidavit are not rebutted by the defendant.

In her Complaint, the plaintiff alleges that, after she complained of sexual harassment, she was suspended without pay for approximately a month during the investigation into her

---

statement in its Reply, in support of its own arguments, the plaintiff submitted a Corrected Affidavit, which, besides correcting other typographical and formatting issues, modified that paragraph to state, "Shoney's did **not** let me know in writing or verbally that I was giving up my right to go to court." (Doc. No. 27 ¶ 17 (emphasis added).)

claims and was later discharged in retaliation for having filed an EEOC charge.

## II. ANALYSIS

### A. Legal Standard

As noted above, the Arbitration Policy provides that it is to be governed by the FAA (Doc. No. 14-2, at 15), and the parties apparently do not dispute that the Arbitration Policy is governed by the FAA. *Accord Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 472 (1989) (parties to an arbitration agreement are free to choose the terms under which they will arbitrate); *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 303 (6th Cir. 2008) (concluding that, where the parties' choice-of-law provision referenced both the FAA and state law, the FAA governed).

Under the FAA, 9 U.S.C. §§ 1–16, when a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and to stay proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3, 4). There is a strong presumption in favor of arbitration under the FAA, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), as a result of which any doubts regarding arbitrability must be resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Generally, however, before the court can send a case to arbitration, it must first determine whether a valid agreement to arbitrate exists under state law. 9 U.S.C. § 2. An arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393. Likewise, "ordinary state-law principles that govern the formation of contracts" apply to the court's analysis. *Id.* at 394 (citing *First Options of Chicago, Inc. v.*

*Kaplan*, 514 U.S. 938, 944 (1995)).

In addition, a party's waiver of the constitutional right to a jury trial inherent in any agreement to arbitrate, to be valid, must be knowing and voluntary. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 420 (6th Cir. 2011) (citing *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985)). The question of the validity of the waiver of the right to a jury trial is governed by federal and not state law. *Id.* Whether a waiver was knowing and voluntary in a given case "is a constitutional question separate and distinct from the operation of rules of substantive contract law." *K.M.C. Co.*, 757 F.2d at 756 (citing *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972)).

**B.      Whether the Waiver Was Knowing and Voluntary**

BAH, in its Motion to Compel Arbitration, asserts that the agreement to arbitrate is valid and enforceable and that the claims raised in the litigation clearly fall within the scope of the agreement to arbitrate. In response, the plaintiff argues that (1) she did not knowingly and voluntarily waive her constitutional right to a jury trial; (2) the arbitration agreement is procedurally and substantively unconscionable; and (3) the arbitration provision is not binding and enforceable due to ambiguity in the language of the Employee Handbook. Because the court finds, as set forth herein, that the plaintiff's waiver of her right to a jury trial was not knowing and voluntary, the court will deny the defendant's motion without reaching the plaintiff's other arguments.

"It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally. . . . Indeed, a presumption exists against its waiver." *Nat'l Equip. Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938), o*verruled in part on other grounds by*

*Edwards v. Arizona*, 451 U.S. 477 (1981)). In evaluating whether a plaintiff knowingly and voluntarily waived her right to pursue employment claims in court, the court considers: (1) plaintiff's experience, background and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the circumstances. *Hergenreder*, 656 F.3d at 420–21 (citing *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003) (en banc)). Nonetheless, "[i]f the claims are properly before an arbitral forum pursuant to an arbitration agreement, the jury trial right vanishes." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 506 (6th Cir. 2004).

Turning to the first factor enumerated by the Sixth Circuit in *Morrison* and elsewhere, the plaintiff here states that she has a tenth-grade education and never received her diploma or a GED; she informed the defendant of this fact in her employment application. (Pl.'s Corr. Aff. ¶¶ 4–5, Doc. No. 27.) She attests that, at the time she accepted the job at Shoney's, she "needed any job," was "desperate to work" to support herself and her new baby, and therefore accepted the job in which she expected to make approximately $17,000 annually. (*Id.* ¶¶ 3, 22.) She states that she has "not seen many contracts in [her] lifetime" and, in fact, had only previously signed rental contracts; she has never purchased a home, and she does not know what the word "forum" means. (*Id.* ¶¶ 23–26.) Based on these allegations, the court finds that the first factor—the consideration of the plaintiff's experience, education, and background—weighs against enforcing the waiver. *Accord Walker v. Ryan's Family Steak Houses, Inc.*, 400 F.3d 370, 381 (6th Cir. 2005) (holding that the first factor weighed against enforcing waiver because plaintiffs had not completed high school, were in "dire financial circumstances," and earned between $11,000 and $16,000 annually).

Regarding this factor, this case is readily distinguishable from the authority on which the defendant relies. In *Schnaudt v. Johncol, Inc.*, No. 2:15-CV-2619, 2016 WL 5394195, at *4 (S.D. Ohio Sept. 27, 2016), for example, the court found that "the sparse facts presented by plaintiffs regarding the first factor do not demonstrate that plaintiffs were uneducated." The court there expressly contrasted the facts before it with those in *Walker*, where the plaintiffs, like the plaintiff in the case at bar, lacked a high school education and presented evidence of financial hardship.

Similarly, in *Allen v. Tenet Healthcare Corp.*, 370 F. Supp. 2d 682 (M.D. Tenn. 2005), the plaintiff, like the plaintiff here, signed an Employee Acknowledgment Form signaling his consent to an agreement to arbitrate contained in the Employee Handbook that he received at the same time. This court held that the plaintiff in that case knowingly and voluntarily waived his right to a jury trial. There, however, the plaintiff, as a radiological technician, held a responsible position and the record contained evidence that he was "intelligent and articulate." *Id.* at 684. The court held that the "plaintiff's position, experience and intelligence level would indicate that he read the documents before signing them and moreover, understood them." *Id.* at 685. The plaintiff in *Allen* is not comparable to the plaintiff here. *See also Jones v. U-Haul Co. of Mass. & Ohio*, 16 F. Supp. 3d 922, 940 (S.D. Ohio 2014) (concluding waiver was voluntary where the plaintiff was "an educated, managerial employee who was capable of understanding the terms of the Agreements").

As for the second factor, the plaintiff applied for the job on May 25, 2013 and worked her first shift on May 31, but she did not sit down with the store manager and sign paper work until the end of her shift. At that time, she "signed numerous documents and received an employee handbook." (Pl.'s Corr. Aff. ¶¶ 2, 6, 7.) She was told that she had to sign everything handed to

her in order to keep the job. She "did not have a lot of time to look at the employment documents." (*Id.* ¶ 12.) The store manager did not explain any of the documents to her or tell her what she was signing; the manager just pointed to where to sign and the plaintiff signed. (*Id.* ¶¶ 12, 15.) No one mentioned arbitration to the plaintiff or explained the Arbitration Policy. The plaintiff was not given time to read the documents, including the Employee Acknowledgment Form, and was not allowed to keep copies of any of the documents she signed. The only document she was allowed to keep was the 50-page Employee Handbook; the manager told her she should review the parts about the dress code and stealing time. (*Id.* ¶ 19, 20.)

Based on these facts, the court finds that this factor, too, weighs against a finding that the waiver was knowing and voluntary. *Accord Walker*, 400 F.3d at 381–82 (finding that this factor weighed against arbitration, in large part because "Plaintiffs typically were hired on the spot after a brief interview, during which the hiring manager hurriedly presented them with various documents that they were instructed to sign in order to be considered for a job. . . . Ryan's managers would place an 'x' in every spot an applicant is required to sign, and applicants would be told to sign every 'x' without any explanation. The hiring manager usually would not mention the arbitration agreement, and Plaintiffs had no opportunity to take the Arbitration Agreement home or consult an attorney, even though the agreement purports to afford them that right."); *see id.* at 382 (distinguishing the case on the facts from *Morrison*, 317 F.3d at 668, where the arbitration agreement was found to be knowingly and voluntarily executed in part because the plaintiff had three days to withdraw her consent). *Cf. Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974 (6th Cir. 2007) (rejecting the plaintiff's claim that her waiver of the right to a jury trial was not knowing and voluntary, in part because the plaintiff, an "educated, managerial employee," was capable of understanding the provisions of the employer's alternative dispute

resolution program, and she had two months between the time her employer announced the program and the program's commencement, "during which she could have consulted with an attorney or decided she did not wish to waive her rights").

Admittedly, merely being rushed or having little time, standing alone, is not typically sufficient to find in favor of the plaintiff on this factor. *See, e.g.*, *Porter v. MC Equities, LLC*, No. 1:12 CV 1186, 2012 WL 3778973, at *12 (N.D. Ohio Aug. 30, 2012) ("[A]lthough plaintiffs assert that they did not have adequate time to review the Agreements and defendants did not explain the Agreements to them, the plaintiffs have not shown that they sought and were denied desired time to consider the Agreements . . . ."). In *Porter*, however, the arbitration agreement was a separate, one-page document, "plainly entitled 'Alternate Dispute Resolution Agreement,'" rather than, as in *Walker*, being "buried" in a twelve-page employment application packet. *Porter*, 2012 WL 3778973, at *7. The plaintiffs were not shown to be uneducated, and the agreement was explicit. Here, unlike in *Porter* but similarly to *Walker*, the actual arbitration agreement was buried in a 50-page Employee Handbook, which the plaintiff clearly did not have time to read. Further, the plaintiff's particular circumstances were such that the defendant's management employees knew or should have known that the packet of documents submitted to the plaintiff for her signature would be confusing.

Turning to the third factor, the court finds that the waiver was not sufficiently clear to put an unsophisticated employee on notice that she was waiving her right to a jury trial. First, the Employee Handbook was over 50 pages long, and the actual Arbitration Policy itself was buried on pages 11 through 15 of the Handbook. The plaintiff was not encouraged or afforded time to look through the entire Employee Handbook before signing the Employee Acknowledgement, and, although she was allowed to keep a copy of the Employee Handbook, she was not told

about the Arbitration Policy and was instructed specifically only to read the parts about the dress code and stealing time. Thus, the defendant cannot rely on the purported clarity of the waiver language in the Arbitration Policy itself.

Moreover, while it certainly would be reasonable to expect a job applicant to read the one-page, four-paragraph Employee Acknowledgment before signing it, the Acknowledgment itself does not incorporate a clear waiver of the right to a jury trial. In signing it, the plaintiff acknowledged only that she was consenting "to binding arbitration under Shoney's Restaurants' Arbitration Policy and Procedures of any and all claims, disputes or controversies that exist now or arise later between me and BAH." (Doc. No. 14-2.) The term "binding arbitration" is not in any way defined or described in the Employee Acknowledgment, and the court finds it unrealistic to expect a young person lacking a high school education to understand the full import of that term. The Employee Acknowledgment does not pair usage of the term with an express identification of the types of legal claims that were implicated or with notice that consent to binding arbitration necessarily entails waiver of the right to a jury trial in a court of law. Nor did the restaurant manager or any other BAH employee explain to the plaintiff what arbitration means or even point out to her that, by signing the Employee Acknowledgment, she was agreeing to arbitrate.

In contrast, in *Allen v. Tenet Healthcare*, the Employee Acknowledgment Form conveyed substantially more information about the arbitration agreement that was incorporated in the Employee Handbook. That acknowledgment stated, in relevant part:

> I acknowledge that I have received a copy of the Tenet Fair Treatment Process brochure. I hereby voluntarily agree to use the Company's Fair Treatment Process and to submit to final and binding arbitration any and all claims and disputes that are related in any way to my employment or the termination of my employment with Tenet. . . . I understand that final and binding arbitration will be the sole and exclusive remedy for any such claim or dispute against Tenet . . . , and that, by

> agreeing to use arbitration to resolve my dispute, both the Company and I agree to forego any right we each may have had to a jury trial on issues covered by the Fair Treatment Process.

*Id.* Thus, the plaintiff in *Allen*, besides being better educated and more sophisticated than the plaintiff here, was presented with a better summary of the company's arbitration agreement.

Likewise, in *Porter*, the arbitration agreement was a short, stand-alone document titled "Dispute Resolution Agreement." 2012 WL 3778973, at *7. It unambiguously stated that it was a legal document, that questions concerning it should be discussed with legal counsel, and that "**[b]y signing this Agreement, the parties are giving up any right they may have to sue each other. Any right to trial by jury or judicial appeal is expressly waived.**" *Id.* (emphasis in original).

The conclusion that the language in the Employee Acknowledgment in the present case was not sufficiently clear is also consistent with the Sixth Circuit's decision in *Walker v. Ryan's Family Steak Houses*. There, too, the language was more explicit than the language at issue here. The arbitration provision stated that "the claimant agrees that any disputes with Ryan's 'which would otherwise be decided in court, shall be resolved only through arbitration . . . and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.'" *Walker*, 400 F.3d at 382. In light of that language, the appellate court did not fully embrace the district court's conclusion that "the waiver provision is explicit, but not clear because it does not use more commonly understood waiver language about forgoing the right to have claims heard at 'trial' or by a 'jury.'" *Id.* (citation omitted). The Sixth Circuit stated:

> We are not entirely persuaded by the district court's reasoning because the Arbitration Agreement does refer to the fact that the signatory agrees to arbitrate claims "which would otherwise be decided in court," conveying the key point that the signatory will not be able to bring a claim in court. And, although the waiver provision does not refer to relinquishing the right to a jury trial, this Court has held that "a party who enters an arbitration agreement necessarily consents to the clear and obvious consequence: the surrender of his right to go to trial."

*Id.* (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 483, 508 (6th Cir. 2004)). The court nonetheless concluded that the district court's finding was "supported by the fact that most of the plaintiffs lack even a high school degree and, therefore, were at a disadvantage when attempting to comprehend the Arbitration Agreement's legalistic terminology." *Id.* The plaintiff here is equally unsophisticated and the language in question substantially more opaque than that in *Walker*. Accordingly, this factor, too, weighs against enforcing the arbitration agreement.

The fourth factor asks whether the agreement was supported by consideration. Under Tennessee law, "[m]utuality of promises is ample consideration for a contract. A mutual promise in itself would constitute a sufficient consideration." *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351 (Tenn. Ct. App. 2001) (internal quotation marks and citation omitted). In this case, the arbitration agreement was clearly intended to be binding on both parties. (*See* Arbitration Policy, Doc. No. 14-2, at 11 ("By accepting employment with BAH, and by continuing your employment with BAH, after you have been provided a copy of or otherwise received notice of this Arbitration Policy and Procedures, you and BAH consent to and accept all of the terms of this Arbitration Policy and Procedures."); *id.* at 12 ("Except as otherwise provided herein, BAH and its employees shall have no right to litigate a dispute in any other forum."). This factor therefore weighs in favor of enforcing the agreement to arbitrate.

As indicated above, however, the first, second, and third factors weigh strongly against enforcement. The fact that the obligation to arbitrate was mutual does not outweigh those factors. Considered in their totality, the circumstances here dictate the result: the plaintiff's waiver of the right to a jury trial was not knowing and voluntary. The court, therefore, will not enforce the arbitration agreement.

**III.   CONCLUSION**

For the reasons set forth herein, the defendant's Motion to Compel Arbitration will be denied. An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge